FOR PUBLICATION
**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re:                                )
                                       )
SUNERGY CALIFORNIA LLC,                )  Case No. 21-20172
                                       )
_____Debtor._____  )
                                       )
RKF GLOBAL, PLLC, an Illinois          )  Adv. No. 23-02025
Professional Limited Liability         )
Company,                               )  DCN No. NH-1
                     Plaintiff,        )
v.                                     )
                                       )
NUTI HART LLP, a California            )
Limited Liability Partnership,         )
GREGORY C. NUTI, a California          )
Resident, CHRISTOPHER H. HART, a)
California Resident, HANK              )
SPACONE, a California Resident         )
and Post-Confirmation                  )
Trustee, and JEFFREY PEREA, a          )
California Resident and Chapter )
11 Trustee,                            )
                     Defendants.       )
_____  )

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

Special counsel employed under 11 U.S.C. § 327(e) by the debtor before it was ousted from debtor-in-possession status took so much umbrage at objections to its $447,658.50 fee application that it sued the chapter 11 trustee, the post-confirmation trustee, and counsel for abuse of process, fraud, conspiracy, promissory estoppel, and breach of contract, demanding damages measured by any fees that are disallowed plus punitive damages for the insult and trial by jury. The doctrine of conflict preemption spells doom for special counsel.

Congress has provided in the Bankruptcy Code a comprehensive system for employing and paying professionals for services in the administration of bankruptcy estates. Bankruptcy Code §§ 326-331

govern employment and compensation. Professional fees and expenses are awarded under standards prescribed by § 330 and paid as administrative expenses under § 503(b)(2). Objections to fee applications are "contested matters" pursuant to Rule 9014 in which trial procedures, including testimony, evidence, and findings characteristic of an adversary proceeding are available.

The fee application process established by Congress serves as the exclusive remedy for professionals employed by an estate. To permit disaffected professionals to sue trustees and their counsel on common-law theories that are inextricably intertwined with a pending fee application would circumvent and constitute an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

The common-law theories that special counsel alleges in its adversary proceeding complaint conflict with the Congressional fee award scheme in a manner that dictates application of the doctrine of conflict preemption. Special counsel can present its evidence when prosecuting its pending contested fee application.

There being no jurisdiction, this adversary proceeding is DISMISSED.

## Jurisdiction

Jurisdiction is founded on 28 U.S.C. § 1334(a). Fee applications are core proceedings concerning administration of the estate that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(A). This adversary proceeding designed to circumvent the fee application process by alleging preempted causes of action is likewise a core proceeding a bankruptcy judge

1  may hear and determine regardless of consent.

2      There is no Seventh Amendment right to trial by jury on fee

3  applications by employed professionals who, by definition, have

4  submitted to the equitable jurisdiction of the bankruptcy court.

5  Hale v. U.S. Trustee, 509 F.3d 1139, 1147 (9th Cir. 2007); cf. In

6  re Wood & Henderson, 210 U.S. 246, 250 (1908) (Bankruptcy Act –

7  professional fees not "legal" in nature).

8      There is no jurisdiction over preempted causes of action.

9  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990). This

10 court has jurisdiction to determine its own jurisdiction.

11

12                          Facts

13     Sunergy California LLC, a photovoltaic module manufacturer,

14 filed this chapter 11 case in January 2021. After six months of

15 poor performance, this court granted the creditor's committee's

16 motion to appoint a chapter 11 trustee in July 2021.

17     Jeffrey Perea was appointed chapter 11 trustee.  Perea hired

18 Nuti Hart LLP as counsel.

19     The Chapter 11 trustee eventually agreed with the committee

20 that liquidation was warranted.

21     A Joint Plan of Liquidation was confirmed July 28, 2022.

22 Hank Spacone was appointed as Post-Confirmation Trustee.

23     After confirmation, fee applications by Sunergy's counsel

24 and its special counsel seeking a total of $587,254.52 in fees

25 and costs drew objections from the United States trustee and the

26 Post-Confirmation Trustee ("liquidating trustee").

27     Sunergy's primary counsel employed under § 327(a), Gonzalez

28 & Gonzalez Law, P.C., seeks $139,635.92.

                            3

1   The United States trustee and the liquidating trustee each

2   objected to $25,606.00 of the Gonzalez fee application for the

3   period after the chapter 11 trustee was appointed as not

4   permitted in light of <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526 (2004).

5   The liquidating trustee also objected to Gonzalez fees for:

6   lack of benefit to the estate; untruthful schedules and statement

7   of financial affairs; inaccurate monthly operating reports;

8   improper listing of prepetition obligations as postpetition

9   accounts payable; and the dubious relationship with RKF.

10   This court bifurcated the Gonzalez fee contest and ruled

11   that fees are not available to § 327(a) DIP counsel for services

12   rendered after appointment of a chapter 11 trustee. <u>In re Sunergy</u>

13   <u>California LLC</u>, 646 B.R. 840 (Bankr. E.D. Cal. 2022). The

14   Bankruptcy Appellate Panel affirmed. No. 22-1230, (9th Cir BAP

15   2023).  The rest of the  Gonzalez fee application is pending.

16   Plaintiff RKF was employed as § 327(e) special counsel to:

17   represent Sunergy in five lawsuits (including its Ninth Circuit

18   appeal challenging an arbitration award in favor of DEPCOM Power,

19   Inc.); coordinate state cases; and "draft[] and review[]

20   contracts in the regular course of business, and provide[] legal

21   advice and counseling that would be customarily required for any

22   supply chain and transactionally based business similar to

23   Debtor."[1] Dkt. 59 at p. 4.

24   The Chapter 11 trustee, concluding that liquidation was

25   appropriate, elected not to pursue litigation over unsecured

26

27

28   [1]Debtor and Debtor-In-Possession's Application for an Order
to Employ RKF PLLC as Special Counsel For Litigation and
Selection [sic] Transaction Work, Dkt. 59, at p. 4.

4

claims, including the DEPCOM Power appeal. Hence, he did not require RKF's special counsel services.

Plaintiff RKF filed a fee and cost application for $447,668.60 for services as special counsel under § 327(e).

The United States trustee and the liquidating trustee objected to the RKF fees on multiple grounds focused on § 330 standards, disclosure requirements, and whether RKF overstepped the bounds of its § 327(e) employment. Those objections remain to be adjudicated in the contested RKF fee application.

RKF counterattacked by filing an adversary proceeding and demanding a jury trial. In its Complaint against the respective trustees and counsel, RKF alleges six common-law counts: (1) Abuse of Process by post-confirmation trustee and trustee's counsel; (2) Fraud by trustee's counsel; (3) Conspiracy to Commit Fraud by chapter 11 trustee, post-confirmation trustee, and trustees' counsel; (4) Promissory Estoppel of chapter 11 trustee and trustee's counsel; (5) Breach of Oral Contract by chapter 11 trustee; and (6) Breach of Oral Contract by trustees' counsel.

RKF demands: (1) compensatory damages based on all lost income not awarded on its fee applications; (2) other unspecified compensatory damages; (3) punitive damages for abuse of process; and (4) other just and equitable relief.

RKF objected to a bankruptcy judge hearing and determining the adversary proceeding and moved to withdraw the reference. The District Court denied the motion.

## Analysis

The Defendants move under Civil Rule 12(b)(6) to dismiss for

1  failure to state a claim on which relief can be granted. Although

2  this court agrees that the complaint fails to state a claim, the

3  defect is so basic that it warrants invoking Civil Rule 12(b)(1)

4  lack of subject-matter jurisdiction.

5       For reasons to be explained, Congress has preempted all of

6  the common-law causes of action alleged in the pleadings. The

7  common-law counts are inextricably intertwined with a pending

8  disputed fee application and conflict with the comprehensive

9  federal scheme for compensating professionals employed to

10 represent bankruptcy estates. Without jurisdiction, Civil Rule

11 12(h)(3) requires that the adversary proceeding be dismissed.

12

13                                I

14                        Procedural Posture

15      Familiar Civil Rule 12 standards govern motions to dismiss.

16 Fed. R. Civ. P. 12(b), incorporated by Fed. R. Bankr. P. 7012(b).

17      Facts alleged by Plaintiff RKF in the complaint are assumed

18 to be true. Facts asserted by Defendants are disregarded.

19      Although the Motion to Dismiss was accompanied by factual

20 assertions that provoked evidentiary objections from RKF and a

21 motion to strike, this court is ignoring the Defendants' factual

22 assertions as it considers this Rule 12 motion.[2]

23      To be clear, this court is excluding consideration of

24 matters outside the pleadings. It relies only on allegations in

25

26      [2]Itching to play a litigation game, RKF says its evidentiary
27 objections and its motion to strike must be resolved before
   addressing other Rule 12 issues. It is not necessary to dive down
28 that rabbit hole. The offending information may become evidence
   in the Rule 9014 contested matter regarding RKF's fees.

1   the complaint, as amplified by the docket of the chapter 11 case

2   that is incorporated by allegations in the pleadings.

3       RKF's non-argumentative factual assertions in Complaint

4   paragraphs 4-125 are viewed in the light most favorable to RKF as

5   non-moving party against the backdrop of the docket of the

6   chapter 11 case that necessarily forms part of the pleadings.

7   Fed. R. Civ. P. 12(d), <u>incorporated by</u> Fed. R. Bankr. P. 7012(b).

8

9                              II

10                      <u>Conflict Preemption</u>

11      Congress has power under the Supremacy Clause of the

12  Constitution to displace state law. <u>Fidelity Fed. Sav. & Loan</u>

13  <u>Ass'n v. De la Cuesta</u>, 458 U.S. 141, 152-53 (1982); <u>cf</u>. <u>Glacier</u>

14  <u>NW, Inc. v. Int'l Bhd. Teamsters, Local No. 174</u>, 598 U.S. ___,

15  slip op. at 2 (June 1, 2023) ("bedrock rule ... that federal law

16  preempts state law when the two conflict.").

17      The species of preemption divide into express preemption and

18  implied preemption; implied preemption subdivides into conflict

19  preemption and field preemption. <u>See</u> <u>Stengel v. Medtronic, Inc.</u>,

20  704 F.3d 1224, 1230 (9th Cir. 2013)(en banc).

21

22                              A

23      The focus here is conflict preemption. To discern conflict,

24  one must understand the congressional purpose and the statutory

25  framework surrounding it. <u>Stengel</u>, 704 F.3d at 1231, <u>quoting</u>

26  <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485-86 (1996).

27      Conflict preemption exists either: (1) where a state

28  requirement actually conflicts with a federal requirement, making

                              7

1  impossible compliance with both requirements; or (2) where a

2  state requirement "stands as an obstacle to the accomplishment

3  and execution of the full purposes and objectives of Congress."

4  Stengel, 704 F.3d at 1231, quoting Hines v. Davidowitz, 312 U.S.

5  52, 67 (1941). See also De la Cuesta, 458 U.S. at 153.

6      A state law may pose an obstacle to a federal statute in

7  various ways. What constitutes a "sufficient obstacle is a matter

8  of judgment, to be informed by examining the federal statute as a

9  whole and identifying its purpose and intended effects. Crosby v.

10 Nat'l Foreign Trade Council, 530 U.S. 363, 372-73 (2000); Chamber

11 of Commerce v. Bonta, 62 F.4th 473, 482-85 (9th Cir. 2023).

12     Even if Congress has not occupied all of the field, state

13 law is preempted to the extent of any conflict with a federal

14 statute. Crosby, 530 U.S. at 372; Savage v. Jones, 225 U.S. 501,

15 533 (1912).

16

17                            B

18              Statute and Intended Effect

19     The Congressional scheme for compensating professionals

20 employed by bankruptcy estates is embodied primarily in

21 Bankruptcy Code §§ 326 through 331, and is implemented by Federal

22 Rules of Bankruptcy Procedure 2014 through 2016.

23

24                            1

25                       Employment

26     For a bankruptcy estate to employ a professional under

27 § 327(a), there must be an application for employment disclosing

28 all of the applicant's connections with the debtor, creditors,

1   and other parties in interest. Fed. R. Bankr. P. 2014(a).

2       The disclosures enable the court to evaluate whether the

3   professional holds or represents an interest adverse to the

4   estate and is a "disinterested person." 11 U.S.C. § 327(a).[3]

5       Special counsel employment § 327(e) applicable to RKF

6   provides that an attorney (who need not be a "disinterested

7   person") that has represented the debtor may be employed for a

8   specified special purpose, other than to represent the trustee in

9   conducting the case, if in the best interest of the estate and if

10  the attorney does not represent or hold any interest adverse to

11  the estate with respect to the matter on which the attorney is to

12  be employed. 11 U.S.C. § 327(e).

13      Attorneys representing a debtor, regardless of whether

14  employed under § 327, must file a statement of compensation paid

15  or agreed to be paid and the source of such compensation. 11

16  U.S.C. § 329; Fed. R. Bankr. P. 2016(a).

17      The law of the Ninth Circuit is that these disclosure

18  requirements are applied strictly with a view to whether there

---

[3]The term "disinterested person" is defined at § 101(14):

The term "disinterested person" means a person that --
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). The terms "creditor," "equity security holder," "insider," and "person" are also defined in the Bankruptcy Code. 11 U.S.C. §§ 101(10), (17), (31), & (41).

has been "full, candid, and complete disclosure." Courts have not hesitated to deny fees in their entirety for noncompliance. <u>Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)</u>, 63 F.3d 877, 881 (9th Cir. 1995)("disclosure rules are applied literally, even if the results are sometimes harsh").

2

Compensation

Congress prescribed compensation rules at § 330(a) that are explicit about what is allowed and what cannot be allowed.

Compensation must be reasonable and for actual, necessary services and expenses, based on the nature, extent, and value of such services, taking six factors into account: (1)time spent; (2) rates charged; (3) necessity to case administration or benefit at the time rendered; (4) reasonableness of time commensurate with complexity, importance and nature of the issue or task; (5) demonstrated skill or experience in bankruptcy field; and (6) reasonableness of compensation based on customary compensation charged by comparably skilled practitioners in cases not under title 11.[4] 11 U.S.C. § 330.

---

[4]Subsections 330(a)(1)-(3) provide in relevant part:

(a)(1) ... the court may award to ... a professional person employed under section 327 or 1103 --
    (A) reasonable compensation for actual, necessary services rendered by the ... attorney and by any paraprofessional person employed by any such person; and
      (B) reimbursement for actual, necessary expenses.
   (2) the court may ... award compensation that is less than the amount of compensation that is requested.
   (3) In determining the amount of reasonable compensation to be awarded to ... [a] professional person, the court shall consider the nature, the extent, and the value of such

No compensation can be allowed for: (1) unnecessary duplication of services; (2) services not reasonably likely to benefit the debtor's estate; and (3) services not necessary to the administration of the case. 11 U.S.C. § 330(a)(4).

Fee applications are governed by Rule 2016(a). There must be a detailed statement of the services rendered, time expended, expenses incurred, and amount requested.

Regardless of whether there objections to an application for fees, the court has an independent duty to assure itself that the compensation requested is warranted in fact and law. <u>In re Scoggins</u>, 517 B.R. 206, 221 (Bankr. E.D. Cal. 2014), <u>citing In re Busy Beaver Bldg Ctrs., Inc.</u>, 19 F.3d 833, 841 (3d Cir. 1994).

Rule 9014 "contested matter" procedure governs disputes regarding fees for professionals employed pursuant to § 327.

The Bankruptcy Rules Advisory Committee appointed pursuant to the Bankruptcy Rules Enabling Act, 28 U.S.C. § 2075, has been

---

services, taking into account all relevant factors, including ---
    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §§ 330(a)(1)-(3).

explicit that the Rule 9014 "contested matter" rule applies when there is an objection to a request for compensation:

> Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, ... If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.

Fed. R. Bankr. P. 9014, Advisory Comm. Note.

The fee applicant has the burden of proof. It has the burden of persuasion and bears the correlative risk of nonpersuasion. Shalaby v. Mansdorf (In re Nakhuda), 544 B.R. 886, 902-03 (9th Cir. BAP 2016); Sunergy California LLC, 646 B.R. at 846.

3

Intended Effect

The above-described comprehensive Congressional scheme for employing and compensating professionals in bankruptcy cases is intended to provide mandatory standards for compensation awards.

To permit the common-law causes of action that RKF alleges in its adversary proceeding complaint would be to "erect an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Stengel, 704 F.3d at 1231; Hines, 312 U.S. at 67; Crosby, 530 U.S. at 372-73.

One need only consider RKF's demand that compensatory damages on its common-law theories be measured by the amount of its fee application that is ultimately not allowed.

If this court, for example, were to disallow any portion of the RKF fee application for a reason dictated by Congress at § 330(a)(4), then RKF's adversary proceeding would be seeking damages in the amount disallowed under § 330(a)(4). That is an

1  obstacle to accomplishment of the purpose of Congress that

2  warrants imposition of conflict preemption.

3

4                                    III

5     § 1334(e)(2) Does Not Affect the Conflict Preemption Analysis

6        In 2005, Congress amended § 1334(b), which provides

7  District Courts with "original but not exclusive jurisdiction" of

8  "civil proceedings" arising under title 11 or arising in or

9  related to cases under title 11, to exclude from § 1334(b) new

10  subsection § 1334(e)(2). 28 U.S.C. § 1334(b).

11        New subsection 1334(e)(2) grants District Courts "exclusive"

12  jurisdiction of "claims or causes of action that involve

13  construction of section 327 ... or rules relating to disclosure

14  requirements under section 327." 28 U.S.C. 1334(e)(2).[5]

15        New subsection 1334(e)(2) does not affect the fee

16

17  _____

18        [5]The § 1334(b) and § 1334(e) amendments provide:

19        § 1334(b): Except as provided in subsection (e)(2), and
          notwithstanding any Act of Congress that confers exclusive
20        jurisdiction on a court or courts other than the district
          courts, the district courts shall have original but not
21        exclusive jurisdiction of all civil proceedings arising
          under title 11 or arising in or related to a case under
22        title 11.

23  28 U.S.C. § 1334(b).

24        § 1334(e): The district court [and its Bankruptcy Court
          'unit'] in which a case under title 11 is commenced or is
25        pending shall have exclusive jurisdiction – ... (2) over all
          claims or causes of action that involve construction of
26        section 327 of title 11, United States Code, or rules
          relating to disclosure requirements under section 327.
27

28  28 U.S.C. § 1334(e)(2).

                                    13

application process under § 330 for which the relevant jurisdictional grant is 28 U.S.C. § 1334(a).

Since the time of original enactment in 1984, 28 U.S.C. § 1334(a) has provided that the District Court has "original and exclusive jurisdiction" of all "cases" under title 11. Hence, original and exclusive jurisdiction over employment and compensation has been integral to § 1334(a) from the outset.

The "case" for purposes of § 1334(a) refers to all matters of administration of the case. The "case" includes employment and compensation of the estate's professionals, which have been treated as administrative, not legal, in nature ever since the Supreme Court settled the question in 1908. In re Wood & Henderson, 210 U.S. at 258; Hale, 509 F.3d at 1147.

While new § 1334(e)(2) did not affect the grant of original and exclusive jurisdiction in § 1334(a), Congress must have meant something. The rule against superfluities dictates that courts interpret words of a statute so that effect is given to all provisions and no part will be inoperative or superfluous. Hibbs v. Winn, 542 U.S. 88, 101 (2004).

The Collier treatise explains there are occasions in which it is alleged that either § 327 or the attendant disclosure rule has not been obeyed and that someone has suffered damages as a consequence of that failure. If litigation raising the question is filed in a state court or in a different district court:

> By stating that the district court has exclusive jurisdiction [over] any litigation that involves the interpretation of § 327, § 1334(e)(2) mandates that the litigation must be tried in the district (or bankruptcy) court in which the bankruptcy case is pending, rather than state court or some other district court.

1 Collier on Bankruptcy ¶ 3.01 (2023).

1    The sparse case law confirms the Collier view that

2  § 1334(e)(2) serves a channeling function. <u>In re Trigee</u>

3  <u>Foundation, Inc.</u>, 2016 Westlaw 3971734 (Bankr. D. D.C. 2016); <u>In</u>

4  <u>re BHI Int'l, Inc.</u>, 2012 Westlaw 2847829 (Bankr. D. D.C. 2012).

5    It follows that § 1334(e)(2) does not affect the application

6  of the doctrine of conflict preemption in this case.[6]

7

8                         <u>Conclusion</u>

9    All of the causes of action in the RKF complaint are

10  inextricably intertwined with compensation for RKF as special

11  counsel employed under § 327(e). They conflict with the

12  comprehensive scheme of Congress for compensating such

13  professionals and are preempted.

14    RKF's exclusive remedy is by way of its contested fee

15  application under § 330. In the course of its prosecution of that

16  fee application, it will be able to present all of the facts that

17  it believes support the adversary proceeding that is preempted.

18  As explained above, the trial of the contested fee application as

19  a Rule 9014 "contested matter" will feature the due process

20  characteristic of the trial of an adversary proceeding.

21    The RKF adversary proceeding "stands as an obstacle to the

22  accomplishment and execution of the full purposes and objectives

23  of Congress" in Bankruptcy Code § 330. There being no

24  jurisdiction, this adversary proceeding is DISMISSED.

25

Dated: June 27, 2023

United States Bankruptcy Judge

26    [6]Preemption does not leave RKF without redress for improper

27  objection to its fee application. Rule 9011(b) has teeth. <u>E.g.</u>,
   <u>In re Estate of Taplin</u>, 641 B.R. 236, 245-49 (Bankr. E.D. Cal.

28  2022). Similarly, RKF could oppose fee requests by trustees and
   counsel. Although distasteful, judges can police misbehavior.